UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


PERCY PARKER

                                        CIVIL ACTION

VERSUS
                                        NUMBER 11-294-SCR

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY


**<u>RULING ON SOCIAL SECURITY APPEAL</u>**

Plaintiff Percy Parker[1] brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of a final decision of Michael J. Astrue, the Commissioner of Social Security ("Commissioner") denying his claims for supplemental security income ("SSI") and disability insurance benefits.

For the reasons which follow the Commissioner's decision is affirmed.


**<u>Background</u>**

Plaintiff Percy Parker was 57 years of age at the time of the benefits decision.   AR pp. 72, 122.[2] Plaintiff attended school

---

[1] Plaintiff Percy Parker died on April 30, 2012.  His daughter has been substituted as plaintiff under Rule 25(a), Fed.R.Civ.P. Record document numbers 13 and 14.  References to "plaintiff" in this ruling are to the claimant, Percy Parker.

[2] Under the regulations, this placed the plaintiff in the category "person of advanced age."  20 C.F.R. § 404.1563(e) and § 416.963(e).

until the eighth grade and was in special education classes.[3]  AR pp. 72, 150.  He worked from 1992 until 2007 at various occupations - laborer, gas station attendant, painter/grinder, and maintenance person.[4]  AR pp. 79-81, 146, 156-63.

In his April 2008 applications for disability and SSI benefits, the plaintiff alleged that he had been unable to engage in substantial gainful activity since October 1, 2007 because of mental problems and problems with his legs.  AR pp. 122-32, 145. The applications were initially denied and the plaintiff requested a hearing before an administrative law judge ("ALJ").  AR pp. 87-94. An ALJ hearing was held on September 17, 2009.  However, on October 10, 2009 the plaintiff suffered a massive brain hemorrhage, which left him in a coma and with an extremely poor prognosis for recovery.[5]  Therefore, when the ALJ issued his decision on November 2, 2009, he found that the plaintiff had a continuing disability that began on the date he suffered the brain aneurysm.[6]  AR p. 44.

The ALJ then had to address the period from the date the

_____

[3] Under the regulations the plaintiff's educational level was "limited."  20 C.F.R. § 404.1564(b)(3) and § 416.964(b)(3).

[4] Plaintiff had some earnings in the first quarter of 2008, but it did not qualify as substantial gainful activity.  AR p. 39.

[5] The brain aneurysm occurred on October 10, 2009.  AR pp. 365-76. This condition eventually lead to the plaintiff's death in 2012.

[6] See, Listing Impairment 4.10, *Aneurysm of aorta or major branches.*

2

plaintiff claimed he became unable to work, his alleged onset date of October 1, 2007, through October 9, 2009.

At step two of the disability analysis, the ALJ found that during this time period the plaintiff had the following combination of severe impairments: schizoaffective disorder, borderline intellectual functioning and substance abuse.[7]  AR p. 39.  At step three the ALJ concluded the plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  In his analysis the ALJ specifically addressed Listings 12.03, 12.04, 12.05 and 12.09, which cover the mental impairments of schizophrenic, paranoid and other psychotic disorders, affective disorders, mental retardation, and substance addition disorders.  AR pp. 39-41.

Before proceeding to the fourth step the ALJ made his findings on the plaintiff's credibility and residual functional capacity ("RFC").  Based on his review of all the evidence the ALJ determined that the plaintiff had the residual functional capacity to perform a full range of work at all exertional levels,[8] but had

---

[7] Plaintiff had a history of alcohol dependence and marijuana abuse.  In October 2007 the plaintiff was hospitalized twice for substance abuse/mental health treatment, and discharged for follow-up treatment at the Baton Rouge Mental Health Center.  AR pp. 183-202.

[8] There is no objective evidence in the record that the plaintiff had any physical, exertional limitations.  Plaintiff
(continued...)

3

nonexertional limitations as a result of his mental impairments
which limited him to work involving simple, routine, repetitive
tasks. AR p. 41. With regard to credibility, the ALJ found that
the plaintiff's statements about the intensity, persistence and
limiting effects of his impairments were not credible to the extent
they were inconsistent with this RFC. AR p. 42. Based on the
testimony of vocational expert Richard D. Corbin, the ALJ
determined that with this RFC the plaintiff would be capable of
the maintenance, janitorial work he had performed in the past.
Therefore, prior to on October 10, 2009, the plaintiff was able to
perform past relevant work and was not disabled at the fourth step.
AR pp. 43, 80-81.

    After the ALJ's partially favorable decision the plaintiff
sought review from the Appeals Council, claiming that the ALJ erred
in finding that he was not disabled prior to October 10, 2009. The
Appeals Council denied the plaintiff's request for review and on
February 1, 2011 affirmed the ALJ's decision. Thus, the ALJ's
findings constituted the final decision of the Commissioner. AR
pp. 3-5. Plaintiff then filed this petition for judicial review
challenging the Commissioner's determination that he was not

---

[8](...continued)
testified at the hearing that he was not seeing or being treated by
any medical doctors for physical health problems. AR pp. 51-52.
Furthermore, Dr. Douglas Casey performed a consultative examination
on May 14, 2008. The results of his physical examination were all
within normal limits. AR pp. 238-43.

disabled before October 10, 2009.

## **Standard of Review**

Under § 405(g), judicial review of a final decision of the Commissioner denying disability and SSI benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the

Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. § 404.1505 and § 416.905. The regulations require the ALJ to apply a five step sequential evaluation to each claim for benefits. 20 C.F.R. § 404.1520 and § 416.920. In the five step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing

any other work.  *Masterson*, 309 F.3d at 271.

Listed impairments are descriptions of various physical and mental illnesses and abnormalities generally characterized by the body system they affect.  Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results.  For a claimant to show that his impairment matches a listed impairment he must demonstrate that it meets all of the medical criteria specified in the listing.  An impairment that exhibits only some of the criteria, no matter how severely, does not qualify.  *Sullivan v. Zebley*, 493 U.S. 521, 529-32, 110 S.Ct. 885, 891-92 (1990); 20 C.F.R. § 404.1525 and § 416.925.

The burden of proving disability rests on the claimant through the first four steps.  At the fourth step the Commissioner analyzes whether the claimant can do any of his past relevant work.  If the claimant shows at step four that he or she is no longer capable of performing past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in some type of alternative work that exists in the national economy.  *Myers*, supra.  If the Commissioner meets this burden the claimant must then show that he or she cannot in fact perform that work.  *Boyd*, 239 F.3d at 705.

## Analysis

Plaintiff argued that three errors were made by the ALJ which require reversal and remand for a proper evaluation of his claim

7

for benefits covering the time period from October 1, 2007 through October 9, 2009: (1) the ALJ's finding at step three is not supported by substantial evidence as the record shows the plaintiff meets Listing 12.05C.; (2) the ALJ's credibility finding is inadequate and not supported by substantial evidence; and, (3) the ALJ improperly rejected the opinions of the plaintiff's treating physician, Dr. Pamela J. Parsons.

Careful review of the administrative record as a whole demonstrates that the claims of reversible error are without merit, and that substantial evidence supports the final decision of the Commissioner that the plaintiff was not disabled from October 1, 2007 through October 9, 2009.

**1.   Plaintiff failed to demonstrate that his impairment meets the requirements of Listing 12.05C, and the ALJ's finding at step three was supported by substantial evidence.**

Plaintiff argued that the ALJ should have found he was disabled under Listing 12.05C. for two reasons: (1) uncontradicted evidence that his IQ scores fall within the range stated in the listing; and, (2) the existence of another mental impairment imposing an additional and significant work-related limitation – a schizoaffective disorder.  Plaintiff asserted that his functional deficits began before the age of 22, noting that he attended special education classes and his highest level of education was eighth grade.  Plaintiff acknowledged evidence relied on by the Commissioner which showed that he did not have deficits in adaptive

functioning prior to age 22, but cited other evidence which he contends establish the diagnostic description of the listing.  In addition, the plaintiff argued that it was error for the ALJ to rely on and give significant weight to the testimony of the medical expert, Tommy T. Stigall, PhD.

The criteria that must be satisfied for Listing 12.05C. are as follows:

> 12.05 *Mental Retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairments before age 22.
>
> The required level of severity for this disorder is met when the requirements in A,B,C, or D are satisfied.
>
> ...
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Both the plaintiff and the Commissioner cited the Fifth Circuit decision in *Randall v. Astrue,* 570 F.3d 651 (5th Cir. 2009).  In this case the Fifth Circuit held that to establish disability under Listing 12.05C., a claimant has the burden of first demonstrating that his impairment satisfies the introductory paragraph's diagnostic description, and then showing the severity criteria of paragraph A, B, C or D.  Listing 12.05C. itself does not define "adaptive functioning."  However, the Fifth Circuit has indicated that the definition of "adaptive activities" found in §

12.00(C)(1) should be used.  Thus, adaptive functioning encompasses adaptive activities "such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office."[9]  *Arce v. Barnhart,* 185 Fed.Appx. 437 (5th Cir. 2006)(unpublished), *citing also*, *Morris v. Dretke*, 413 F.3d 484, 487 (5th Cir. 2005).

Neither party disputes the evidence in the record which demonstrates that the plaintiff meets the requirements of the first part of paragraph C.  Plaintiff's IQ tests established a performance IQ score of 69 on the WAIS-III test administered as part of an evaluation by clinical psychologist Fred L. Tuton on June 11, 2008.  AR p. 245-50.[10]  Furthermore, as determined by the ALJ at step two, the plaintiff has a severe mental impairment of schizoaffective disorder.  Plaintiff asserted, and the Commissioner did not contest, that this satisfies the "other mental impairment" requirement needed to meet the second part of paragraph C.[11]

---

[9] 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(1).

[10] Under the regulations, where the verbal, performance and full scale IQs are provided in the Wechsler series, the Commissioner uses the lowest of the three in conjunction with Listing 12.05.  20 C.F.R. Ch. III, Pt. 404, Subpt. P, App.1, 12.00D.6.c.  In this case the plaintiff's other scores were a verbal score of 75 and a full scale score of 70.

[11] Record document number 8, Plaintiff Memorandum in Support, p. 9.  The Fifth Circuit has not yet addressed whether a finding at step two that an impairment is severe is the equivalent of the
(continued...)

10

Therefore, the determinative issue is whether the plaintiff established the substantive requirements of the diagnostic description in the introductory paragraph of the listing, which requires that a claimant at least, "(1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Randall*, 570 F. 3d at 661.

Plaintiff's arguments that his impairments satisfy the diagnostic description of Listing 12.05 are not supported by the record. Plaintiff initially argued that the IQ test scores in the range provided by the listing, and his limited eighth grade education with enrollment in special education, satisfied the listing's diagnostic description.[12] However, in support of this argument the plaintiff merely cited cases which state that there is a presumption that IQ remains stable over time, and that neither a formal diagnosis of mental retardation nor IQ tests conducted before the age of 22 are required to meet the requirements of Listing 12.05C. None of these cases hold or support the conclusion that the mere existence of IQ scores which satisfy the first part

---

[11](...continued)
"significant work-related limitation of function" requirement of the second part of paragraph C of 12.05. *Henderson v. Astrue*, 2008 WL 269450 (N.D. Tex. Jan. 30, 2008). Since the Commissioner did not argue that the plaintiff's severe mental impairment does not satisfy the second requirement of paragraph C, for purposes of this ruling the court accepts that it does so.

[12] Plaintiff Memorandum in Support, pp. 9-11.

of paragraph C, along with a limited or special education, establish that the impairment satisfies all the elements of the diagnostic description.[13]  Even if this evidence established the first element of the diagnosis - significantly subaverage general intellectual functioning - the plaintiff failed to explain or cite any authority to show that such evidence also demonstrates deficiencies in adaptive functioning initially manifested during the developmental period, that is, onset of the impairment before age 22.

Plaintiff focused more on these two elements in his reply memorandum, citing evidence in the record which he argued established that he had deficits in adaptive functioning before age 22.  Plaintiff cited evidence that: (1) he had poor academic skills and was still in fourth grade and special education at age 16;[14] (2)

---

[13] Such a conclusion would also be contrary to *Randall*, in which the court emphasized that a claimant must satisfy the diagnostic description's substantive requirements independently of the severity criteria, and noted with approval the following language from a Seventh Circuit case:

> An IQ between 60 and 70 is insufficient, even with the presence of some impairment, to establish disability per se on grounds of mental retardation.  Rather the key term in the introductory paragraph of section 12.05 of the regulation, so far as bears on this case, is deficits in adaptive functioning.(internal quotations omitted).

*Randall*, 570 F.3d at 660, *citing*, *Novy v. Astrue*, 497 F.3d 708, 709-10 (7th Cir. 2007).

[14] Plaintiff stated at the administrative hearing and in other documents that the highest grade he attended was eighth grade and he entered the Job Corps at 16.  AR pp. 72, 150, 348, 351.  This
(continued...)

his treating doctor noted a lack of ability to converse in a clear, linear fashion which would make communicating in the workplace very difficult; and, (3) notations from examining physicians of destructive, aggressive and violent behavior, illogical thought processes, psychosis, hallucinations and paranoia.[15]  Plaintiff argued that the evidence relied on by the Commissioner was isolated, reflected abilities in 2008 rather than prior to age 22, and for various other reasons should not be credited.  In effect the plaintiff argued that the evidence weighs against the ALJ's finding, and that the court should reweigh the evidence and try the third step issues de novo.  The court cannot do this on judicial review.  Rather, the court's only inquiries are whether the correct legal standards were applied and whether substantial evidence supports the ALJ's conclusions.

A review of the record as a whole and the ALJ's decision shows the record contains substantial evidence that the plaintiff did not have deficits in adaptive functioning before age 22, and did not satisfy the criteria for disability under Listing 12.05C.  AR pp. 39-41.  Stigall, the medical expert who testified at the hearing, stated it was his opinion that the plaintiff's impairments did not meet or equal a listed impairment.  He specifically analyzed

---

[14](...continued)
obviously contradicts any statement that the plaintiff was in fourth grade until age 16.  AR p. 238.

[15] Plaintiff cited, AR pp. 72, 74, 185, 206-07, 238, 247, 331.

Listings 12.03, 12.04, 12.05C., 12.06 and 12.09 and stated that the plaintiff's impairments did not meet or equal them.  AR pp. 52-54, 66-67.  With regard to Listing 12.05C., Stigall based his opinion on Tuton's evaluation and interpretation of the tests results. Tuton did not diagnose the plaintiff with mental retardation. Based on the tests results and his examination, Tuton's diagnosis was borderline intellectual functioning - not mental retardation. Stigall also stated that doctors' notations of the plaintiff's multiple self-contradictions and lack of ability to communicate in a clear, linear fashion, were most likely a manifestation of the plaintiff's schizoaffective disorder.[16]  AR pp. 64-65.

The record also contained evidence that the plaintiff's academic deficiencies were primarily related to difficulties in reading, but he had good comprehension and writing skills. According to the plaintiff, after he left school he was in the Job

---

[16]  Plaintiff acknowledged that the ALJ is entitled to rely on a medical expert's testimony, but argued that it was error for the ALJ to rely on Stigall's testimony because he did not review Tuton's report prior to the hearing.  Plaintiff failed to explain how this fact resulted in prejudice/reversible error in the ALJ's analysis at the third step.  Moreover, the record reflects that Stigall reviewed Tuton's evaluation during the hearing, and that the plaintiff's representative was able to fully question Stigall on the report and his opinions based on the report.  AR pp. 55-70.
    "Procedural perfection in administrative proceedings is not required" so long as "the substantial rights of a party have not been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

Corps for two years and learned how to operate heavy equipment.[17]
Plaintiff also reported that he was able to prepare his own meals,
clean the house, wash dishes, shop for groceries, attend church and
use public transportation.   In a report of a November 2007
psychiatric evaluation, it was noted that some of the plaintiff's
strengths were his participation in hobbies and social activities,
maintaining employment, and the ability to adapt to stressful life
circumstances.   AR pp. 188, 189, 196, 235, 242, 248, 269, 348.

The above cited evidence is more than substantial evidence to
support the conclusion that the plaintiff did not satisfy the
listing requirement of deficiencies in adaptive functioning
initially manifesting before age 22, and that he was not disabled
under Listing 12.05C.

**2.   The ALJ properly evaluated the plaintiff's credibility
and sufficiently explained the reasons for the finding,
which was supported by substantial evidence.**

The ALJ must consider a claimant's subjective complaints, but
may find that those complaints are not credible or are exaggerated
in light of the objective medical and other evidence of record,

---

[17] Plaintiff argued that the Commissioner provided no evidence
that he was able to successfully acquire skills as a heavy
equipment operator, and failed to explain how his inability to move
past fourth grade at age 16 did not indicate intellectual or
adaptive limitations.   Record document number 11, Plaintiff Reply
Memorandum, p. 4.   At the third step it is the plaintiff's burden –
not the Commissioner's burden – to establish that his impairment
meets all of the medical criteria specified in the listing.   An
impairment that exhibits only some of the criteria, no matter how
severely, does not qualify.   *Sullivan*, *supra*.

such as daily activities and medications.  The ALJ is not required to give subjective evidence precedence over objective evidence. *Anthony v. Sullivan*, 954 F.2d 289, 295-96 (5th Cir. 1992); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).  The ALJ's evaluation of the claimant's credibility is entitled to deference and must be upheld if it is supported by substantial record evidence.  *Id*.

Plaintiff's argument can essentially be summarized as follows: there is other evidence in the record which supports his credibility and weighs against the ALJ's finding.  However, because the ALJ's credibility determination was supported by substantial evidence, that there is also evidence which supports his credibility is not a basis for reversing the ALJ's decision.[18]

The ALJ cited the correct standards governing the credibility determination, and then correctly applied those principles to the

---

[18] Judicial review under § 405(g) does not require that all of the evidence support the ALJ's findings.  Even if substantial evidence supports the claimant's position this is not a ground for reversal. As long as the finding or decision is supported by substantial evidence in the record as a whole it must be affirmed. § 405(g); *see*, *Carroll v. Dept. Health, Ed. and Welfare*, 470 F.2d 252, 254, n. 4 (5th Cir. 1972); *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001); *Palomino v. Barnhart,* 515 F.Supp.2d 705, 710 (W.D. Tex. 2007), citing, *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)(when record as a whole indicates a mixed collection of evidence regarding plaintiff's impairments and their impact, Commissioner's decision upheld as long as there is substantial evidence to support it).

record evidence.  AR p. 41. It is apparent from the ALJ's written decision that the ALJ considered all the evidence.  For example, the ALJ discussed the plaintiff's testimony, daily activities, records and treatment notes from the plaintiff's hospitalizations in 2007 and follow-up care through the Baton Rouge Mental Health Center, and reports from the plaintiff's treating doctors.  After considering the evidence the ALJ concluded that the plaintiff's statements about the intensity, persistence and limiting effects of his impairments were credible, but only to the extent consistent with his residual functional capacity.  The ALJ explained several reasons for this conclusion, such as the plaintiff's testimony and statements about his daily activities, the fact that his last employment ended because he was laid off rather than because of his impairments, and improvements in the plaintiff's condition after treatment.[19]  This evidence is sufficient for a reasonable mind to accept as adequate to support the ALJ's conclusion that the plaintiff was not entirely credible.

Therefore, with regard to the ALJ's credibility assessment, the plaintiff failed to demonstrate that the ALJ applied an incorrect legal standard, or that the ALJ's finding was supported by less than substantial evidence.  This claim of reversible error

---

[19]  Initially, the plaintiff was going to the mental health center every few weeks, but at the time of hearing he was going every three months. AR pp. 50-51, 226.  See also, AR pp. 73, 167-69, 171, 224-30, 238-39, 245-46, 327-28, 333-34, 336, 347-51.

is without merit.

###   3.   The ALJ did not improperly reject the opinions of the plaintiff's treating physician.

Plaintiff's argument that the ALJ improperly rejected Dr. Parsons' opinions focused on Dr. Parsons' mental residual functional capacity assessments completed on April 27, 2009 and August 14, 2009.  AR pp. 352-363.  Plaintiff acknowledged that the ALJ gave reasons for not crediting Dr. Parsons' opinions, but argued that the ALJ did not consider each of the factors required by the regulations and the Fifth Circuit decision in *Newton*. Plaintiff essentially argued that the ALJ's error was not harmless, because if the ALJ had properly analyzed and weighed the opinions the RFC determination and the outcome at the third step would have been different.

It is well established that a treating physician's opinions are not conclusive, and  may be assigned little or no weight when good cause is shown.  Good cause may permit the ALJ to discount the weight of a treating doctor where that evidence is conclusory, unsupported by medically acceptable clinical, laboratory or diagnostic techniques, or is otherwise unsupported by the evidence. *Newton*, 209 F.3d at 455-56.  It is equally well established that the ALJ has the authority and duty to weigh the evidence, and on judicial review the court cannot reweigh the evidence.  The ALJ's "power to judge and weigh evidence includes the power to

disregard," and the court must uphold that determination if it is supported by substantial evidence. *Greenspan v. Shalala*, 38 F.3d at 238.

Review of the record as a whole demonstrates that the plaintiff's third claim of error is also without merit. The record reflects that the ALJ cited the proper legal standard for considering the medical opinions of a treating physician. AR pp. 42-43. While the ALJ did not cite and specifically discuss each *Newton* factor,[20] the ALJ gave several reasons for not accepting Dr. Parson's 2009 assessments of the plaintiff's mental residual functional capacity, namely, that the findings checked off by Dr. Parsons were not supported by the clinic treatment records, and they were also inconsistent with her previous assessment and the assessment of Dr. Monnette.

The reasons given by the ALJ for discounting the restrictions indicated in Dr. Parson's 2009 reports are supported by the record.

---

[20] The factors are length of treatment, frequency of examination, nature and extent of the treatment relationship, support of opinion afforded by medical evidence, consistency of opinion with the record as a whole, and specialization of the treating physician. *Newton*, 209 F.3d at 456. To the extent the ALJ may have omitted discussion of a particular factor, the plaintiff did not specify which factor the ALJ did not consider. Moreover, the plaintiff failed to support his conclusory assertion that he was prejudiced by the ALJ's failure to conduct a proper analysis under *Newton*. He did not explain how a different analysis would have changed the conclusion that his impairment did not satisfy the criteria of a listed impairment (third step), or the ultimate finding that he was not disabled from October 1, 2007 through October 9, 2009.

Other than one brief notation in January 2009,[21] the record did not contain any clinic records of plaintiff's treatment by Dr. Parsons or other mental health personnel in 2009.  AR p. 324.  Dr. Parsons' opinions in 2009 were also inconsistent with her assessment on July 31, 2008 and Dr. Monnette's assessment done on November 5, 2007. AR pp. 231-37, 332.   While the plaintiff pointed out several excerpts from the treatment records which he contends support Dr. Parsons' restrictions, the same records contain other information which supports the ALJ's finding that the limitations imposed by Dr. Parsons were unsupported.   Again, the fact that the plaintiff cites some evidence in the record to support his position does not change the fact that the ALJ had good cause not to credit Dr. Parsons' conclusory assessments done in April and August of 2009.

**4.   The ALJ's RFC determination and finding that the plaintiff was not disabled at the fourth step was supported by substantial evidence.**

The residual functional capacity determination is needed at the fourth step to decide whether the claimant can do any of his past relevant work, and it is needed at the fifth step to decide whether the claimant can adjust to other work in the national economy.  20 C.F.R. § 404.1520(e) and § 416.920(e).  Thus, after

---

[21] This notation stated that the plaintiff reported "he is doing ok," and his "appetite is intact."  Plaintiff did report restlessness and lack of sleep after discontinuing one of his medications, but the record contained a notation to resume that medication.  AR p. 324.

20

concluding that the plaintiff was not disabled at the third step, the ALJ correctly proceeded to evaluate the plaintiff's residual functional capacity.  The ALJ found that prior to October 10, 2009, despite his impairments, the plaintiff had the capacity to engage in a full range of work at all exertional levels, but was limited to simple, routine, repetitive tasks.  This finding is supported by substantial evidence.  The June 1, 2008 review and mental residual functional capacity assessment by Joseph Kahler, PhD and Stigall's hearing testimony provide more than substantial evidence to support the ALJ's RFC determination.[22]  Based on this residual functional capacity, vocational expert Corbin testified that the plaintiff would be able to perform his past cleaning and janitorial work.  AR pp. 43, 80-81.  Therefore, the ultimate conclusion at the fourth step that the plaintiff was not disabled from October 1, 2007 through October 9, 2009, is supported by substantial evidence and must be affirmed.

## Conclusion

The record as a whole demonstrates that the ALJ applied the correct legal standards, and the findings are supported by substantial evidence.  Therefore, under sentence four of 42 U.S.C. §405(g), the final determination of the Commissioner of Social Security Michael J. Astrue, that plaintiff Percy Parker was not

---

[22] AR pp. 54-55, 251-67.

disabled prior to October 10, 2009, and denying his application for disability and supplemental security income benefits prior to that date, is affirmed and this action will be dismissed.

Baton Rouge, Louisiana, November 1, 2012.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

22